### RICHMOND GUANO COMPANY v. JOHN T. BENNETT.

(Filed 8 December, 1915.)

**Attorney and Client—Additional Services—Implied Promise to Pay—Trials—Questions for Jury.**

Where an attorney has obtained judgment in favor of his client upon an agreed fee, and in writing therefor he states that the judgment debtor has land in an adjoining county, and in view of the largeness of the amount involved he had deemed it expedient to have the judgment recorded in the adjoining county, though not necessary, which he had done, and thereafter the judgment debtor, in making a sale of the land to a stranger, was compelled to pay the amount of the judgment in full, which the attorney received, but in transmitting it to his client retained a commission of a certain per cent upon the amount collected as a further fee for additional services rendered in an action by the creditor to recover the fee retained, it is held as reversible error for the trial judge to submit only one issue, as to the value of the services rendered upon an implied promise to pay, it being first necessary for them to determine an issue as to whether the further services were rendered with the intent of both parties that there should be no charge therefor.

CLARK, C. J., dissenting.

GUANO CO. *v.* BENNETT.

APPEAL by plaintiff from *Devin, J.,* at May Term, 1915, of RICHMOND.

Civil action.    The action was to recover the sum of $350, which plaintiff alleged that defendant had wrongfully retained as commissions and attorney's fees on a collection of $2,990.28, paid into office on a judgment in plaintiff's favor against John and D. M. Morrison.

Defendant contended that said amount was a legitimate charge for services as attorney and that nothing was due plaintiff.

On issue submitted, the jury rendered the following verdict:

"What amount, if any, is defendant, John T. Bennett, entitled to retain out of the money collected on plaintiff's judgment against John and D. M. Morrison?    Answer: $300."

On the issue, the judge, among other things, charged the jury as follows:  "The present question of fact for you to pass upon is as to the amount.    Where services are rendered by one person which are valuable and which are accepted by another person, it implies a contract to pay what the services are reasonably worth, and so, in this case, the defendant's right to retain money out of the amount collected is based upon an implied contract upon the part of the Richmond Guano Company, a contract implied by law to allow him to retain what his services were reasonably worth; this is the question for you to pass upon from the evidence"; and this constitutes plaintiff's fifth exception.

"You will consider all the evidence in the case; you will give Bennett the amount contended for by Bennett, or you will say from the evidence what the services are reasonably worth"; and this constitutes plaintiff's sixth exception.

Plaintiff, having duly excepted, assigns these portions of the charge for error.

*Manning & Kitchin and Lowdermilk & Dockery for plaintiff.*
*J. A. Lockhart for defendant.*

HOKE, J., after stating the case:  There were facts in evidence tending to show that plaintiff held a note for $2,895.60, drawing interest from 10 December, 1912, against John and D. M. Morrison, the collection of which seemed to be in some doubt, and the holders having consulted defendant, a practicing attorney of the Richmond County bar, as to the course to be pursued, it was determined to reduce the claim to judgment, defendant agreeing to do this for $100, and a deposit with the clerk of the court of $10, to cover cost of summons, etc.    The $10 and note were forwarded.

Defendant obtained the judgment and had a transcript docketed in the adjoining county of Scotland and, in a letter to plaintiffs, of 12 April, 1913, among other things, said that he had obtained the judgment and "that, in order to take every precaution, I am having a transcript dock-

eted in Scotland County, where they own some land. I don't think this is absolutely necessary, but I don't care to take any risk on an amount as large as this. I will be glad to have 'your check for $100, etc., as I need that amount, etc." There were other letters between the parties relevant to the issue. Thus, on 6 June, defendant wrote saying, among other things: "I am informed that they (the judgment defendants) are negotiating the sale of some property at a handsome figure, so I take it they will have to lift the judgment before the sale goes through. I had not overlooked the matter and will be on the job until you realize the amount of your claim." The $100 was sent and receipt acknowledged, and later, 4 July, 1913, the judgment debtors, having made an advantageous sale of a body of land owned by them in Scotland County, it became necessary to discharge the lien created by plaintiff's judgment docketed in the county, and same, to the amount of $2,990.28, was paid on the judgment into the office in Richmond County, and when defendant, having receipted for same, forwarded to plaintiff the amount, less fees of $450 retained for further services, plaintiff returned check, claiming that the $100 already paid covered the attorney's charges, and the sum less the fees, the subject-matter of the litigation, seems to have been again paid over, leaving the question as to this charge to be determined by suit. Defendant, in the course of his evidence, among other things, testified:

"After writing the letter of 12 April (in which plaintiff was notified that judgment had been obtained) the only service that I rendered was having the judgment docketed, that is, a transcript of the judgment sent to Scotland County," and later: "The only service rendered by me, in addition to obtaining the judgment, was to have a transcript sent to Scotland County, and receipting for and forwarding the money, and for this I charged $350, etc."

In *Winkler v. Killian,* 141 N. C., at page 578, in reference to the promise to pay usually implied by the law in case of services rendered, the Court said: "It is ordinarily true that where services are rendered by one person for another, which are knowingly and voluntarily accepted, without more, the law presumes that such services are given and received in expectation of being paid for, and will imply a promise to pay what they are reasonably worth. This is a rebuttable presumption, for there is no reason why a man cannot give another a day's work as well as any other gift, if the work is done and accepted without expectation of pay."

Speaking to the same subject in *Prince v. McRae,* 84 N. C., 675, *Chief Justice Smith,* delivering the opinion, said: "Whether plaintiff's services shall be deemed a gratuity or constitute a claim for compensation must be determined by the common understanding of both parties. If they were intended to be and accepted as a gift or act of benevolence

they cannot at the election of plaintiff create a legal obligation to pay, etc." And, in that case, the question was left to the jury to determine.

Applying the principle approved in these and other decisions of like kind, we are of opinion that, on the facts presented in the record, there was error in the ruling of his Honor that the only question for the jury to determine was the reasonable value of the services rendered, and that the issue as to defendant's liability also must be referred to the jury on the question whether any services, after procuring the judgment, were rendered and received in expectation of being paid for, or were they rendered with the intent and understanding of both parties that no further charge should be made in addition to the $100 already received.

And, if this is decided for defendant, then the question of amount shall be also determined by the jury on the basis of what such additional services were reasonably worth.

There must be a new trial of the issue, and this will be certified, etc.

. New trial.

CLARK, C. J., dissenting: The defendant, by letter, contracted with the plaintiff as follows: "I will reduce the claim to judgment for $100 and a deposit of $10 with Thomas L. Covington, clerk of our Superior Court, to cover court costs advanced to get service of summons." The plaintiff accepted the terms, sent the note and deposit fee; the action was brought and judgment obtained without contest. Thereafter the defendant wrote the plaintiff, "I will have a transcript of this judgment docketed in Scotland County where they own some land. I don't think this is absolutely necessary, but I don't care to take any risk with an amount as large as this. I will be glad to have your check for $100." This was his bill, as per contract.

The check for $100 was promptly sent. On 17 April, 1913, the defendant acknowledged receipt of the $100 and wrote that he had docketed the transcript in Scotland "in order that every precaution might be taken to enforce this judgment in case the same was not paid according to agreement. I think we will get the money without having to issue execution." The defendant testifies: "The money was paid into the clerk's office here. I receipted the clerk here for the money on 13 June, 1913. . . . . After writing the letter of 12 April the only service I rendered was to have the judgment docketed—that is, a transcript of the judgment sent to Scotland County." The following question was asked the defendant: "What other letter or act, if anything, did you do, except to send a transcript to Scotland County of the judgment taken in Richmond County, and also receipt the clerk of the court here for the money? A. I think that is all, and for that service I charged the additional fee of $350. For issuing the summons, filing the complaint, and obtaining judgment and having it docketed here in this court my charge was $100."

It will thus be seen from the defendant's evidence and his correspondence that he agreed to reduce the claim to judgment for $100. This was done and his fee was paid. ·The docketing of the judgment was done by the clerk as required by law, Rev., 573, and sending it to Scotland County, which was done by the clerk, at the instance of the defendant, was a very proper act to secure the lien. This involved no labor or legal knowledge. At any rate, if it was not within ˙the contract of the parties, which was ended, it was a generous but gratuitous act for which he was not entitled to charge without the consent of the plaintiff. He wrote the plaintiff he did not think it necessary. If the defendant thought he should have been paid for doing this he should˙ have submitted the matter to his client. No labor had been done, yet the defendant deducted $350 from plaintiff's money, without his consent, for this unnecessary act, as he wrote plaintiff, of having the transcript sent to Scotland County.

Upon the evidence the judge should have directed the verdict for the plaintiff. The courts are for the administration of justice. Lawyers are very necessary in the dispatch of public business and entitled to just compensation, but the courts are not operated for the purpose of rendering them compensation. The main object is to serve the public. It is of the ·utmost importance that clients shall feel that in the courts they will not be put to any disadvantage in dealing with counsel.

There is no doubt that the defendant thought that the plaintiff should pay him $350 because the money was collected and his agreement was merely to reduce the claim to judgment. But on his own evidence the defendant had nothing to do with the collection, for it was paid into office without any action on his part and without any request by the plaintiff that he should take any action. There was no contract, express or implied, for which he was entitled to take $350 out of the money in the clerk's office, which had been paid in as the property of the plaintiff.

There was nothing done at the request of the plaintiff except what was paid for under the contract by the check for $100. ˙When the defendant wrote the plaintiff that he thought the act of sending the transcript to˙Scotland County was unnecessary, it was in substance a statement that he was not doing an act requiring payment. ˙The plaintiff could not have understood that he would be charged $350 for this. There is nothing to be submitted to the jury, for there was no express contract and none implied. If the defendant should have compensation for this it was a gratuitous act for which his recourse is on the sense of justice on the part of the plaintiff.